Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Steve A. Papazian, Bar No. 288097
steve@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Cadence Design Systems, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., *a Delaware Corporation*, <br><br> Plaintiff, <br><br> v. <br><br> CONVENIENTPOWER HK LTD., *a Hong Kong Private Limited Company*, CONVENIENTPOWER US, INC.*, a Delaware Corporation*, SHENZHEN YICHONG WIRELESS TECHNOLOGY CO., LTD*, a Chinese Limited Company*, SICHUAN YICHONG TECHNOLOGY CO., LTD., *a Chinese Limited Company*, E-CHARGING, INC., a California Corporation, <br><br> Defendants. | Case No.  21-4771 <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR:** <br><br> 1. **COPYRIGHT INFRINGEMENT;** <br> 2. **CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS;** <br> 3. **BREACH OF CONTRACT** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

For its complaint, Plaintiff Cadence Design Systems, Inc. ("Cadence") alleges against Defendants ConvenientPower HK, Ltd. ("ConvenientPower HK"), ConvenientPower US, Inc. ("ConvenientPower USA"), Shenzhen Yichong Wireless Technology Co., Ltd. ("Shenzhen Yichong"), Sichuan Yichong Technology Co., Ltd. ("Sichuan Yichong"), and E-Charging Inc. ("E-Charging USA") (collectively, "ConvenientPower") as follows:

1.      This is an action for copyright infringement, circumvention of copyright protection systems, and breach of contract.

## PARTIES

2.      Plaintiff Cadence is a Delaware corporation with its principal place of business at 2655 Seely Avenue, San Jose, California 95134.

3.      Defendant ConvenientPower HK, Ltd. ("ConvenientPower HK") is a Hong Kong private company with its principal place of business at Room 1301, 13/F, Blissful Building, No. 243-247 Des Voeux Road Central, Hong Kong.

4.      Defendant ConvenientPower US, Inc. ("ConvenientPower USA") is a Delaware Corporation with its principal place of business at 2240 Agnew Road Santa Clara, CA 95054. ConvenientPower USA filed its Articles of Incorporation on April 17, 2014.

5.      Defendant Shenzhen Yichong Wireless Technology Co., Ltd. ("Shenzhen Yichong") is a Chinese limited company with an office located at Room 1001, 10 Floor, Microprofit Plaza, Gaoxin South 6th Road, Nanshan, Shenzhen, 518063, People's Republic of China.

6.      Defendant Sichuan Yichong Technology Co., Ltd. ("Sichuan Yichong") is a Chinese limited company with an office located at Unit A-10, 4 Floor, Tianfu Jingrong Center, North Hupan Road, Tianfu New Area, Chengdu 610000, Sichuan, People's Republic of China.  On information and belief, Sichuan Yichong also refers, or has referred, to itself as Chengdu Yichong Wireless Technology Co., Ltd. and Chengdu Yichong Semiconductor Co., Ltd.

7.      Defendant E-Charging Inc. ("E-Charging USA") is a California Corporation with its principal place of business at 1569 Fairway Green Cir., San Jose, CA 95131.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

*Defendants Are Alter Egos and a Single Enterprise*

8.    On information and belief, ConvenientPower HK, ConvenientPower USA, Shenzhen Yichong, Sichuan Yichong, and E-Charging USA are a single enterprise and/or alter egos of one another.

9.    ConvenientPower HK and ConvenientPower USA share a unity of interest.

10.    ConvenientPower HK and ConvenientPower USA have overlapping officers and employees.

11.    On information and belief, ConvenientPower HK, ConvenientPower USA, Shenzhen Yichong, Sichuan Yichong, and E-Charging USA are under the same equitable control.

12.    Siming Pan is the Chief Executive Officer, legal representative, and/or leader of ConvenientPower HK, ConvenientPower USA, Shenzhen Yichong, Sichuan Yichong, and E-Charging USA.

13.    The entity referred to as Convenient Power HK was established in 2006.

14.    The entity referred to as Shenzhen Yichong was established in 2016.

15.    Defendants Shenzhen Yichong and ConvenientPower HK claim that they entered a "strategic cooperation" in August of 2017.

16.    In some instances, Defendants identify their "strategic cooperation" as "Echong Wireless Group."

17.    In some instances, Defendants identify their "strategic cooperation" as "Easy Chong Wireless."

18.    In some instances, Defendants identify their "strategic cooperation" as "ConvenientPower Systems."

19.    Defendants interchangeably refer to themselves collectively as Echong Wireless Group and ConvenientPower Systems.

20.    For example, at least one online job posting related to "Easy Chong Wireless," states under "Company Profile" that "Echong Wireless Group, (English: ConvenientPower) is a global high tech enterprise focusing on the field of wireless charging."

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

21.    This same job posting represents that Defendant Shenzhen Yichong and E-Charging Inc. are one and the same.

22.    This same job posting states that Defendants ConvenientPower HK and Shenzhen Yichong entered into a "strategic cooperation . . . headquartered in Hong Kong, and has branches in Shenzhen [and] Silicon Valley."

23.    On information and belief, E-Charging USA and ConvenientPower USA are Defendants' "branches" in Silicon Valley.

24.    On January 9, 2018, ConvenientPower Systems issued a press releases wherein Defendants identified themselves as "ConvenientPower Systems (CPS)" and stated that the "CPS Group is located in Hong Kong, San Francisco, Shenzhen, Chengdu."

25.    On information and belief, the locations identified in Defendants' January 9, 2018 press release—Hong Kong, San Francisco, Shenzhen, Chengdu—correspond to Defendants ConvenientPower HK, ConvenientPower USA, Shenzhen Yichong, and Sichuan Yichong, respectively.

26.    Defendants share a website, namely www.convenientpower.com.

27.    Defendants collectively refer to themselves as "ConvenientPower" and "ConvenientPower Systems" without claiming any legal separateness.

28.    For example, on information and belief, Defendants' English website (convenientpower.com/home/contact-us/#findus) lists several business addresses that correspond to Defendants ConvenientPower HK, ConvenientPower USA, Sichuan Yichong, and Shenzhen Yichong without mentioning any legal separateness.

29.    ConvenientPower organizes its business activities by region and business units rather than legal entities.

30.    For example, ConvenientPower represents that its officer and employee Majid Kafi is "Vice President, General Manager, US Operation, Chip Business Group."

31.    Defendants share trade names, namely "ConvenientPower" and "Yichong Wireless."

32.    It would be inequitable for Defendants to hide behind their corporate veils.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

33.    For example, it would be inequitable for Defendants to hold themselves out to the public as a single entity (*e.g.*, "Convenient Power Systems"), disregarding any corporate separateness, and then deny they are one and the same for purposes of avoiding liability and/or frustrating enforcement of any eventual judgment.

34.    Defendants have also acted in bad faith.

35.    For example, before bringing suit, Plaintiff contacted ConvenientPower to attempt to resolve the claims set forth herein. On several instances, ConvenientPower promised to investigate Plaintiff's claims and reply to Cadence's inquiries. Most recently, ConvenientPower asked for additional data supporting Cadence's claims, which Cadence readily provided. Yet ConvenientPower's representatives in China refused to follow through on their promises. As set forth below, Defendants also continued their unauthorized infringement and other wrongful conduct well after receiving explicit notice from Cadence.

*Defendants are Joint Venturers*

36.    On information and belief, all five Defendants are members of a joint venture.

37.    ConvenientPower and Yichong Wireless stated that they entered into a "strategic cooperation" in 2017.

38.    On information and belief, Defendants have referred to themselves collectively as a "joint venture."

39.    One online article dated September 15, 2017 reports that "Shenzhen-based E-Charging Wireless Technology Co. has entered into a strategic partnership with ConvenientPower HK Ltd., a longtime wireless charging market leader in Hong Kong, to set up a joint venture, ConvenientPower Systems (CPS)."

40.    On information and belief, Defendant Shenzhen Yichong is also referred to as "Shenzhen E-Charging Wireless Technology Co."

41.    On information and belief, Defendants combined their property, skill, and/or knowledge with the intent to carry out a single business undertaking, namely to create and sell wireless charging products.

42.     On information and belief, ConvenientPower and Yichong Wireless both have an ownership interest in their joint venture.

43.     On information and belief, ConvenientPower and Yichong Wireless both have control over their joint venture.

44.     For example, Siming Pan has control over all five Defendants and their joint venture.

45.     On information and belief, Convenient Power and Yichong Wireless share in the profits and losses from their joint venture.

46.     On information and belief, Defendants use the Cadence Software (as defined below) and incurred the obligations specified below for purposes of advancing their joint venture.

## JURISDICTION

47.     This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501, *et seq.* (copyright infringement), 17 U.S.C. §1201, *et seq.* (circumvention of copyright protection systems under the Digital Millennium Copyright Act), and 28 U.S.C. §§ 1331 (federal questions jurisdiction) and 1338(a).  The Court also has supplemental jurisdiction over Count III below, pursuant to 28 U.S.C. §1367(a).

48.     This Court has personal jurisdiction over ConvenientPower.

49.     Defendants contractually agreed "to submit to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute" pursuant to the sections 27 and 26 of the Software License and Maintenance Agreements, respectively, attached hereto as Exhibits 1 and 2.

50.     ConvenientPower USA is a Delaware corporation registered in California, based in Santa Clara, California, and subject to general jurisdiction in this State.

51.     E-Charging USA is a California corporation based in San Jose, California and subject to general jurisdiction in this State.

52.     Defendants ConvenientPower HK, Sichuan Yichong, and Shenzhen Yichong are also subject to jurisdiction as the alter egos and/or joint venturers of ConvenientPower USA and E-Charging USA.

53.     Defendants also regularly conduct business in California.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

54.     For example, ConvenientPower claims to offer technical customer support in Silicon Valley, references it's "Silicon Valley design center" on its website and lists Silicon Valley as one of its primary company locations.

55.     ConvenientPower HK has entered into certain banking and/or financing transactions in this District governed by California law.

56.     As alter egos of one another, Defendants are subject to service of process at their common address and through their common agent for service of process in California.

57.     ConvenientPower has copied, downloaded, and/or otherwise used Cadence Software at Internet Protocol Addresses ("IP Addresses") located in this District.

## VENUE

58.     Venue is proper in this District pursuant to the terms of the Software License and Maintenance Agreements, attached hereto as Exhibits 1 and 2.  Venue is also proper in this District pursuant to 28 U.S.C. § 1400(a) because ConvenientPower may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) because ConvenientPower is subject to personal jurisdiction in this District.

## INTRADISTRICT ASSIGNMENT

59.     This is an intellectual property action subject to district-wide assignment pursuant to Civil L.R. 3-2(c).

## GENERAL ALLEGATIONS

60.     Cadence is a worldwide leader in Electronic Design Automation (EDA) software and engineering services, as well as semiconductor intellectual property.  Cadence's custom and analog tools help engineers design the transistors, standard cells, and IP blocks that make up systems on chips.  Cadence's offerings allow engineers to design integrated circuits and printed circuit boards, and test and simulate their designs to verify the builds of their circuits.

61.     Cadence's design platforms include Allegro, OrCAD, PSpice, Virtuoso, and other related software and tools (collectively, the "Cadence Software").  The Cadence Software provides engineers with the ability to design, test, and simulate printed circuit boards customized for their

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

specific needs.  Since its founding, Cadence has expended considerable resources further developing and refining this technology to remain at the forefront of the EDA industry.

62.     Cadence licenses these products throughout the United States, Europe, Asia and other parts of the world.

63.     Cadence owns a valid Copyrighted Work, entitled Cadence PCB Systems Division Version 15.0, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 7-264-496 (the "'496 Registration").  A true and correct copy of the '496 Registration is attached hereto as Exhibit 3.

64.     Cadence owns a valid Copyrighted Work, entitled Allegro 16.5, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 7-751-386 (the "'386 Registration").  A true and correct copy of the '386 Registration is attached hereto as Exhibit 4.

65.     Cadence owns a valid Copyrighted Work, entitled Allegro PCB 16.6, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-323-840 (the "'840 Registration").  A true and correct copy of the '840 Registration is attached hereto as Exhibit 5.

66.     Cadence owns a valid Copyrighted Work, entitled Allegro PCB 17.2, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-322-031 (the "'031 Registration").  A true and correct copy of the '031 Registration is attached hereto as Exhibit 6.

67.     Cadence owns a valid Copyrighted Work, entitled OrCAD 16.5, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-320-016 (the "'016 Registration").  A true and correct copy of the '016 Registration is attached hereto as Exhibit 7.

68.     Cadence owns a valid Copyrighted Work, entitled OrCAD 16.6, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-320-041 (the "'041 Registration").  A true and correct copy of the '041 Registration is attached hereto as Exhibit 8.

69.     Cadence owns a valid Copyrighted Work, entitled OrCAD 17.2, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-320-040 (the "'040 Registration").  A true and correct copy of the '040 Registration is attached hereto as Exhibit 9.

70.     Cadence owns a valid Copyrighted Work, entitled PSPICE 16.5, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-320-014 (the "'014 Registration"). A true and correct copy of the '014 Registration is attached hereto as Exhibit 10.

71.     Cadence owns a valid Copyrighted Work, entitled PSPICE 16.6, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-320-008 (the "'008 Registration"). A true and correct copy of the '008 Registration is attached hereto as Exhibit 11.

72.     Cadence owns a valid Copyrighted Work, entitled PSPICE 17.2, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-319-984 (the "'984 Registration"). A true and correct copy of the '984 Registration is attached hereto as Exhibit 12.

73.     Cadence owns a valid Copyrighted Work, entitled MMSIM 15.10 Release, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-259-594 (the "'594 Registration"). A true and correct copy of the '594 Registration is attached hereto as Exhibit 13.

74.     Cadence owns a valid Copyrighted Work, entitled Spectre 16.10 Release, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-394-149 (the "'149 Registration"). A true and correct copy of the '149 Registration is attached hereto as Exhibit 14.

75.     Cadence owns a valid Copyrighted Work, entitled Virtuoso, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-285-328 (the "'328 Registration"). A true and correct copy of the '328 Registration is attached hereto as Exhibit 15.

76.     Cadence owns a valid Copyrighted Work, entitled Virtuoso (IC) 6.1.7, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-394-148 (the "'148 Registration"). A true and correct copy of the '148 Registration is attached hereto as Exhibit 16.

## CADENCE'S LICENSE AGREEMENTS AND LICENSE FILES

77.     In order to protect its software and intellectual property against any unauthorized use, Cadence has made significant investments in technology designed to prevent unauthorized access or use.

78.   Cadence typically licenses its proprietary software. The license is issued as a Floating/Concurrent license, whereby the customer purchases a set number of floating seats, which may be occupied by any licensed users as long as the number of concurrent users does not exceed the set number. When a customer purchases a license to the Cadence Software, the customer receives an invoice indicating the type of license that was purchased, as well as a license file.

79.   The Cadence Software will not operate unless a user first installs the Cadence License Manager. When using the Cadence Software on a single computer, the user must install the License Manager directly on that computer. If the user intends to use a network license, the user must install the License Manager on a server accessible over the network.

80.   The Cadence License Manager cannot be installed unless a user first executes an agreement with Cadence. Specifically, when installing the License Manager, a user is prompted to accept the terms of a Cadence Design Systems, Inc. Software License and Maintenance Agreement ("SLMA").

81.   Cadence has incorporated multiple versions of its SLMA into the License Manager installation process.

82.   For example, Cadence's Allegro PCB 16.5 and 16.6, both of which were used without authorization by ConvenientPower, are governed by a Version 16 SLMA ("SLMA v16").

83.   For example, Cadence's Allegro PCB 17.2, which was used without authorization by ConvenientPower, is governed by a Version 17 SLMA ("SLMA v17").

84.   True and correct copies of the SLMA v16 and SLMA v17 (collectively, "SLMAs") are attached hereto as Exhibits 1 and 2.

85.   The SLMAs state, in part:

> THIS SOFTWARE LICENSE AND MAINTENANCE AGREEMENT ("AGREEMENT") IS A LEGAL DOCUMENT BETWEEN YOU AND CADENCE DESIGN SYSTEMS, INC. ("CADENCE"). PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING YOUR CADENCE SOFTWARE ("SOFTWARE"). BY USING THE SOFTWARE, YOU (EITHER AN INDIVIDUAL OR A BUSINESS ENTITY) AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. IF YOU DO NOT WANT TO BE BOUND BY THE TERMS OF THIS AGREEMENT, CADENCE IS UNWILLING TO

LICENSE THE SOFTWARE TO YOU, IN WHICH EVENT YOU MUST PROMPTLY RETURN THE SOFTWARE AND ALL ACCOMPANYING ITEMS (INCLUDING MANUALS, BINDERS OR OTHER CONTAINERS, AND ANY OTHER PRINTED MATERIALS) WITHIN 30 DAYS. BY CLICKING YES DURING THE INSTALLATION AND BY USING THE SOFTWARE . . . YOU ACKNOWLEDGE THAT YOU HAVE READ THE AGREEMENT AND ACCEPT ITS TERMS.

86.    When attempting to install the License Manager, a user must select "I accept the terms of the license agreement" in order to proceed with installation.  If the user does not select the "I accept" option, or if the user selects "I do not accept the terms of the license agreement," the user cannot proceed with installation of the License Manager.

87.    After the License Manager has been installed, the program prompts the user to specify the location of a Cadence license file.  Alternatively, the user may later configure the appropriate licensing for the Cadence Software by using a License Server Configuration Utility packaged with the Cadence Software.

88.    After the user installs the License Manager, the user may then install the Cadence Software on the client desktops or laptops connected to the License Server.  The Cadence Software will not operate on those client machines unless the user provides a valid license file issued by Cadence.  The license file indicates to the License Manager and the Cadence servers how many licenses are available for use at the client machines, and which Cadence Software and additional functionality the user is permitted to use.

89.    When the user installs the Cadence Software, the user must again accept the terms of the SLMAs by selecting the "I accept" option.  As before, if the user does not select the "I accept" option, or if the user selects "I do not accept the terms of the license agreement," the user cannot proceed with installation of the Cadence Software.

90.    To protect its software and intellectual property against any unauthorized use, Cadence also has made significant investments in technological measures designed to track unauthorized use.

91.    These measures transmit data to Cadence whenever they detect unauthorized alterations or uses of the product, such as when a user bypasses a technological measure by using

1  counterfeit license files or when a user alters the Cadence Software by circumventing the license

2  mechanism.

3      92.    The Cadence Software also includes other technological measures to verify that the

4  Cadence Software is used according to an appropriate license.

5  <u>**CONVENIENTPOWER'S INFRINGEMENT AND UNAUTHORIZED ACCESS**</u>

6      93.    ConvenientPower purports to be a global company engaged in, *inter alia*, the design

7  and development of wireless power applications for users of mobile electronics and other related

8  activities.

9      94.    ConvenientPower has repeatedly obtained, copied, and used the Cadence Software

10  without authorization from Cadence.

11      95.    ConvenientPower has unlawfully copied, reproduced, and used the Cadence Software

12  without a valid license file and without authorization from Cadence.

13      96.    By installing and using the Cadence License and the Cadence Software,

14  ConvenientPower accepted the terms of the SLMAs and agreed to be bound by the terms of the

15  SLMAs.

16      97.    On information and belief, after installing the Cadence Software, ConvenientPower

17  uses "cracked" license files to access and use the Cadence Software.

18      98.    Under the SLMAs, ConvenientPower agreed "to take all reasonable steps and to

19  exercise due diligence to protect the Product from unauthorized reproduction, publication, or

20  distribution."  ConvenientPower further agreed that it would "have a reasonable mechanism in place

21  to ensure that the Software may not be used or copied by unlicensed persons."

22      99.    On information and belief, ConvenientPower has altered and/or "cracked," and/or used

23  altered and/or "cracked" versions of the Cadence License Manager and/or Cadence Software that

24  circumvent technological measures.

25      100.   On information and belief, ConvenientPower has also tampered with files during

26  installation of the Cadence License Manager and/or Cadence Software and otherwise used altered

27  data files for installing the Cadence License Manager and/or Cadence Software, including using

28  "cracked" versions of the license and/or using counterfeit license files.

101.    By obtaining, copying, installing, and/or using "cracked" versions of the Cadence License Manager and/or Cadence Software and/or "cracked" licenses, ConvenientPower circumvents technological measures that control access to a copyrighted work protected under the Copyright Act.

102.    On information and belief, ConvenientPower also conspires with others to use and obtain unauthorized software license files from a source other than Cadence and/or to circumvent Cadence's technological measures.

103.    On information and belief, ConvenientPower knowingly obtains, downloads, copies, installs and/or otherwise uses unauthorized versions of the Cadence License Manager and/or Cadence Software, including using websites and internet service providers known to traffic in illegal content.

104.    By installing the Cadence Software using the counterfeit license files and subsequently using the Cadence software without authorization, ConvenientPower breached the terms of the agreed upon SLMAs by allowing the Cadence Software to be used or copied by unlicensed persons, and by failing to take reasonable steps and exercise due diligence to protect the Cadence Software from unauthorized reproduction, publication, or distribution.

105.    Further, each copy of the Cadence Software includes additional Product Options, which are available at additional cost for higher levels of design functionality.  These options are locked unless they are purchased by the customer, in which case Cadence provisions a license file that enables the user to access the corresponding portions of the license.

106.    However, when the Cadence License Manager and/or Cadence Software is "cracked," or when "cracked" license files are used, the license protections for the Product Options are bypassed and all Options are unlocked, thus allowing a user to obtain any Product Options it desires without having to pay for those Options.

107.    By using "cracked" versions of the Cadence License Manager and/or Cadence Software and/or "cracked" license files, ConvenientPower circumvents additional technological measures that prevent users from accessing additional copyrighted Product Options that would otherwise require an independent purchase to use.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

108.   By using the Cadence Software without authorization and by circumventing Cadence technological measures, ConvenientPower has also violated Cadence's registered copyrights and avoided paying Cadence over $37.4 million dollars in license fees.

109.   Through the use of its technological measures, Cadence compiled a list of at least 38 machines that were using Cadence Software without having a valid License issued by Cadence.  These technological measures identified multiple instances where these machines installed, uninstalled, and/or used Cadence Software.

110.   The information these machines transmitted to Cadence indicate that ConvenientPower devices and accounts were responsible for a significant number of unauthorized uses of the Cadence Software.

111.   For example, the domains "convenientpower.com" and "cpsdomain," among others, are linked to the machines bypassing technological measures in the Cadence Software.

112.   Further, email addresses ending with the extension "@convenientpower.com" and "echwireless.com," among others, are also linked to the machines bypassing technological measures in the Cadence Software.

113.   The domain "echwireless.com" belongs to and/or is otherwise associated with ConvenientPower.

114.   The domain "convenientpower.com" belongs to and/or is otherwise associated with ConvenientPower.

115.   The domain "cpsdomain" belongs to and/or is otherwise associated with ConvenientPower.

116.   Cadence has detected specific media access control ("MAC") addresses associated with the infringing machines, including addresses ending in -652, and -e85.

117.   On October 21, 2019, Cadence notified ConvenientPower of the detected MAC addresses ending in -652 and -e85.

118.   On information and belief, the detected MAC address ending in -652 and -e85 are associated with ConvenientPower.

119. ConvenientPower's unlawful conduct not only harms Cadence, but it also harms Cadence's customers. Namely, Cadence's customers who pay for Cadence Software are forced to compete with ConvenientPower, which unlawfully uses the software without payment. By eliminating this cost item, ConvenientPower is able to compete unfairly with law-abiding competitors who pay for Cadence Software.

120. Thus, ConvenientPower irreparably harmed Cadence's long-term market share and reputation.

**CADENCE INFORMS CONVENIENTPOWER OF ITS UNAUTHORIZED ACTIVITIES**

121. On October 19, 2019, Cadence informed ConvenientPower that Cadence has evidence showing ConvenientPower has used unlicensed or "cracked" versions of Cadence Software.

122. On November 4, 2019, Cadence sent a second notification letter providing further notice of ConvenientPower's unauthorized use of Cadence Software.

123. ConvenientPower did not respond to Cadence's October 19, 2019 and November 4, 2019 letters.

124. On November 11, 2019, Cadence called ConvenientPower and spoke with Mr. Qi Tang, who indicated ConvenientPower would conduct an investigation.

125. After several attempts by Cadence to discuss this matter, ConvenientPower ceased communications with Cadence in or around April 2019.

126. On May 11, 2021, Cadence's outside counsel sent a letter to Qi Tang and Siming Pan of ConvenientPower, providing further notice of ConvenientPower's unauthorized use of Cadence Software.

127. In its May 11, 2021 correspondence, counsel again invited ConvenientPower to discuss ConvenientPower's use of Cadence Software and attempt to resolve this matter.

128. ConvenientPower proposed to speak in June 2021 and requested further data evidencing ConvenientPower's infringement.

129. After Cadence provided the data requested by ConvenientPower, ConvenientPower then sought to cancel the parties agreed upon meeting in June 2021.

130.    ConvenientPower did not cease its unauthorized use of Cadence Software after Cadence provided notice on October 19, 2019.

131.    To the contrary, ConvenientPower has continued using Cadence Software without authorization, including as late as June 18, 2021.

## COUNT I

(Copyright Infringement under 17 U.S.C. § 501)

132.    Cadence incorporates and realleges by reference paragraphs 1 through 131 above as if set forth in full herein.

133.    Cadence is the owner of various valid Copyrighted Works, including those registered under the '496 Registration, '386 Registration, '840 Registration, '031 Registration, '016 Registration, '041 Registration, '040 Registration, '014 Registration, '008 Registration, '984 Registration, '594 Registration, '149 Registration, '328 Registration, and '984 Registration.

134.    Cadence has complied with all statutory formalities required by the Copyright Act to maintain the validity of its copyrights in its Copyright Works, including as reflected in its copyright registrations attached as Exhibits 3 through 16.

135.    On multiple occasions ConvenientPower has downloaded, modified, used, and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence, including copies of Cadence's Copyrighted Works registered under the '496 Registration, '386 Registration, '840 Registration, '031 Registration, '016 Registration, '041 Registration, '040 Registration, '014 Registration, '008 Registration, '984 Registration, '594 Registration, '149 Registration, '328 Registration, and '984 Registration.

136.    ConvenientPower's unauthorized use and/or duplication of Cadence's copyrighted software constitutes direct and contributory copyright infringement under 17 U.S.C. § 501.

137.    ConvenientPower is also liable for vicarious infringement.

138.    The individuals who downloaded, modified, used, and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence are subject to the control of ConvenientPower and ConvenientPower directly benefits from their direct infringement.

139.    Individuals who downloaded, modified, used and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence have "@convenientpower.com" and "echwireless.com" email addresses.

140.    On information and belief, ConvenientPower directly benefits from its infringing activity by, *inter alia*, using Cadence Software to offer services to its clients without paying license fees to Cadence.

141.    ConvenientPower's actions in violation of the Copyright Act have been knowing and willful.

142.    For example, ConvenientPower has continued its unauthorized use of Cadence Software after Cadence first provided notice of ConvenientPower's infringement, including as late as June 18, 2021.

143.    ConvenientPower's conduct is causing, and is likely to continue to cause, irreparable harm to Cadence and its customers, and ConvenientPower's unlawful conduct will continue to cause such irreparable injury unless ConvenientPower is enjoined by this Court.  Cadence has no adequate remedy at law.   Cadence is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

144.    As a result of ConvenientPower's wrongful actions, Cadence has suffered damages in an amount to be proven at trial, including at least $37.4 million dollars in unpaid license fees.  Cadence is entitled to its actual damages and ConvenientPower's profits or, alternatively, statutory damages, as well as its costs, attorneys' fees and interest.

## **COUNT II**

(Circumvention of Copyright Protection Systems under 17 U.S.C. § 1201)

145.    Cadence incorporates and realleges by reference paragraphs 1 through 144 above as if set forth in full herein.

146.    The Cadence License Manager and Cadence Software employ technological mechanisms that effectively provide security controlled access to the work and copyright protections.

147.    On information and belief, ConvenientPower has modified the Cadence License Manager and/or Cadence Software and/or knowingly used copies of Cadence Software that had been

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

tampered and or "cracked" to circumvent Cadence's License Manager and other access control mechanisms. ConvenientPower made these modifications to the Cadence License Manager and/or Cadence Software, and/or knowingly used copies of Cadence Software or Cadence's License Manager that had been tampered or "cracked," in order to bypass the required entry and/or use of a valid license file and to circumvent the technological measures controlling access to Cadence Software, enabling ConvenientPower to bypass Cadence's security access mechanisms and copyright protections in the Cadence Software in violation of 17 U.S.C. § 1201(a)(1).

148.    On information and belief, ConvenientPower's actions have been and continue to be willful.

149.    On information and belief, ConvenientPower also materially contributes to the circumvention of the technological measures by obtaining, downloading, and copying unauthorized versions of the Cadence License Manager and/or Cadence Software from websites and internet service providers known to traffic in illegal content, and is therefore also contributorily liable for the circumvention of Cadence's technological measures.

150.    ConvenientPower is also vicariously liable for circumvention of Cadence's technological measures.

151.    The individuals who circumvented Cadence's copyright protection mechanisms are subject to the control of ConvenientPower and ConvenientPower directly benefits from their direct infringement.

152.    Individuals who circumvented Cadence's copyright protection mechanisms have "@convenientpower.com" and "@echwireless.com" email addresses.

153.    On information and belief, ConvenientPower directly benefits from this circumvention by, *inter alia*, using Cadence Software to offer services to its clients without paying license fees to Cadence.

154.    ConvenientPower's conduct is causing, and is likely to continue to cause, irreparable harm to Cadence and its customers, and ConvenientPower's unlawful conduct will continue to cause such irreparable injury unless ConvenientPower is enjoined by this Court. Cadence has no adequate

remedy at law.  Cadence is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 1203.

155.    As a result of ConvenientPower's wrongful actions, Cadence has suffered damages in an amount to be proven at trial.  Cadence is entitled to its actual damages and ConvenientPower's profits or, alternatively, statutory damages in an amount up to $2500 per act of circumvention, device, product, component, offer, or performance of service, as well as its costs, attorneys' fees and interest.

## COUNT III

(Breach of Contract)

156.    Cadence incorporates and realleges by reference paragraphs 1 through 155 above as if set forth in full herein.

157.    ConvenientPower agreed to the terms of the SLMA v16 and SLMA v17 by clicking "I accept the terms of the license agreement" in order to proceed with installation of the License Manager and the Cadence Software.

158.    Cadence substantially performed its obligations under the SLMAs and any nonperformance was excused.

159.    ConvenientPower breached at least Section 3 of both SLMAs by copying, sharing, and using the Cadence Software without authorization from Cadence, by bypassing the license file entry and not using valid license files, by taking actions to circumvent the entry of license file information, by continuing to use the Cadence Software for commercial purposes without any valid license, by installing the Cadence Software on its computers without authorization, and by not paying a licensing fee.

160.    Cadence was damaged as a result of ConvenientPower's breaches.  For example, ConvenientPower's breach deprived Cadence of substantial license fees.

161.    Cadence is entitled to injunctive relief and recovery of its attorneys' fees, costs and interest.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiff Cadence prays that this Court provide relief by:

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

a.    Preliminarily and permanently enjoining and restraining each of ConvenientPower HK, ConvenientPower USA, Shenzhen Yichong, Sichuan Yichong, and E-Charging USA as well as their officers, directors, agents, employees, and all other individuals, firms, corporations, associations, and partnerships affiliated, associated, or acting in concert with them from using the Cadence Software or any other Cadence Software to which they hold no valid license;

b.    Awarding Cadence compensatory and actual damages;

c.    Ordering each of ConvenientPower HK, ConvenientPower USA, Shenzhen Yichong, Sichuan Yichong, and E-Charging USA to provide an accounting of its profits;

d.    Awarding Cadence its actual damages plus ConvenientPower's profits under the Copyright Act, or, at the election of Cadence, statutory damages for ConvenientPower's copyright infringement;

e.    Awarding Cadence its actual damages plus ConvenientPower's profits, or, at the election of Cadence, statutory damages for ConvenientPower's copyright infringement pursuant to 17 U.S.C. § 1203(c)(1);

f.    Increasing the award damages because of ConvenientPower's willful infringement and/or circumvention;

g.    Requiring each of ConvenientPower HK, ConvenientPower USA, Shenzhen Yichong, Sichuan Yichong, and E-Charging USA to deliver upon oath, to be impounded during the pendency of this action, all infringing copies of Cadence's copyrighted works, any unauthorized software used to circumvent the licensing restrictions on the Cadence Software, and any products produced, designed, or manufactured, in part or in whole, with or in conjunction with the Cadence Software; and that an order of impoundment and/or seizure in respect of the foregoing be issued out of this Court in the manner provided by the Copyright Act and by the United States Supreme Court Copyright Practice Rules (1909); and that at the conclusion of this action, the Court shall order all such materials so held to be surrendered to Cadence or to be destroyed under a Writ of Destruction issued under 17 U.S.C. § 503, whichever shall seem to this Court to be most just and proper;

h.    Awarding Cadence restitution;

i.    Awarding Cadence its attorneys' fees and costs;

19

1    j.    Awarding Cadence prejudgment and post-judgment interest;

2    Awarding Cadence such other and further relief as the Court may deem just and proper.

3    **<u>DEMAND FOR JURY TRIAL</u>**

4    Cadence demands a jury trial on all issues triable by a jury.

5

6    DATED:  June 22, 2021                    By:    */s/ Guy Ruttenberg*

7    Guy Ruttenberg
     Steve Papazian
8    RUTTENBERG IP LAW, A PROFESSIONAL
     CORPORATION
9    1801 Century Park East, Suite 1920
     Los Angeles, CA 90067
10   Telephone: (310) 627-2270
     Facsimile: (310) 627-2260
11   guy@ruttenbergiplaw.com
     steve@ruttenbergiplaw.com
12

13   *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES